No. 2013-1462, -1463

In The
# United States Court of Appeals
# for the Federal Circuit

RYDEX, LTD.,

Plaintiff-Appellant,

v.

FORD MOTOR COMPANY and MAZDA MOTOR OF AMERICA, INC.
(doing business as Mazda North American Operations),

Defendants-Cross Appellants,

and

TOYOTA MOTOR SALES, U.S.A., INC.,

Defendant-Cross Appellant,

and

NISSAN NORTH AMERICA, INC.,

Defendant-Cross Appellant,

and

AMERICAN HONDA MOTOR CO., INC. and SUBARU OF AMERICA, INC.,

Defendants.

Appeals from the United States District Court
for the Southern District of Texas in
Case No. 11-CV-0122
Judge Vanessa D. Gilmore

## BRIEF FOR DEFENDANTS-CROSS APPELLANTS

Eric A. Buresh
Jason R. Mudd
ERISE IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, KS 66211
(913) 777-5600

Christopher T. Handman
Hagan C. Scotten
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600

*Counsel for Defendants-Cross
Appellants Ford Motor Company
and Mazda Motor of America, Inc.*

December 16, 2013

(Additional counsel listed on inside cover)

Eric W. Schweibenz
Richard D. Kelly
Robert C. Mattson
OBLON, SPIVAK, MCCLELLAND,
MAIER & NEUSTADT, L.L.P.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000

*Counsel for Defendant-Cross
Appellant Toyota Motor Sales,
U.S.A., Inc.*

Jeffrey S. Patterson
Sean N. Hsu
HARTLINE DACUS BARGER DREYER
LLP
6688 North Central Expressway
Suite 1000
Dallas, TX 75206
(214) 346-3701

*Counsel for Defendant-Cross
Appellant Nissan North America, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Ford Motor Company and Mazda Motor of America certifies the following:

1.    The full name of every party represented by me is:  **Ford Motor Company**; **Mazda Motor of America**, d/b/a Mazda North American Operations.

2.    The real parties in interest represented by me are:  **Ford Motor Company**; **Mazda Motor of America**, d/b/a Mazda North American Operations.

3.    All parent corporations and any publicly held companies that own 10% or more of the stock of the parties I represent are as follows:

Ford Motor Company states that it does not have a parent corporation.  State Street Corporation, a publicly traded company has a subsidiary, State Street Bank and Trust Company, which operates as the trustee for Ford common stock in the Ford defined-contribution plans master trust and has disclosed in filings with the U.S. Securities and Exchange Commission that as of December 31, 2012, it holds 10% or more of Ford's stock.

Mazda Motor of America is a wholly owned subsidiary of Mazda Motor Corporation, which is a publicly held corporation.

4.    The names of all law firms and partners or associates that appeared for the parties represented by me in the trial court or that are expected to appear in this court are:  **Hogan Lovells US LLP**: Christopher T. Handman, Hagan C. Scotten.

i

**Erise IP, P.A.**: Eric A. Buresh, Jason R. Mudd, Ajay A. Sharma.  **Shook, Hardy & Bacon LLP**: Matthew C. Broaddus.  **McGuirewoods LLP**: Thomas M. Farrell.

Dated:  December 16, 2013                                    /s/ Christopher T. Handman
                                                            Christopher T. Handman

## CERTIFICATE OF INTEREST

Counsel for Toyota Motor Sales, U.S.A., Inc. certifies the following:

1.     The full name of every party represented by me is:  **Toyota Motor Sales, U.S.A., Inc.**

2.     The real party in interest represented by me is:  **Toyota Motor Sales, U.S.A., Inc.**

3.     All parent corporations and any publicly held companies that own 10% or more of the stock of the party I represent are as follows:  Toyota Motor Corporation.

4.     The names of all law firms and partners or associates that appeared for the party represented by me in the trial court or that are expected to appear in this court are:  **Oblon, Spivak, McClelland, Maier & Neustadt, L.L.P.**: Eric W. Schweibenz, Richard D. Kelly, Robert C. Mattson, John F. Presper, Lindsay J. Kile, Steven P. Weihrouch (no longer with firm).  **Beck, Redden & Secrest**: David J. Beck, Michael E. Richardson.

Dated:  December 16, 2013                      /s/ Eric W. Schweibenz
                                                              Eric W. Schweibenz

## CERTIFICATE OF INTEREST

Counsel for Nissan North America, Inc. certifies the following:

1.      The full name of every party represented by me is:  **Nissan North America, Inc.**

2.      The real party in interest represented by me is:  **Nissan North America, Inc.**

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the party I represent are as follows:  Nissan Motor Co., Ltd. (NML) has no parent company.  Nissan North America, Inc. is a wholly owned subsidiary of NML.

4.      The names of all law firms and partners or associates that appeared for the party represented by me in the trial court or that are expected to appear in this court are:  **Hartline Dacus Barger Dryer LLP**: Jeffrey S. Patterson, Jeffrey J. Cox, Sean N. Hsu.

Dated:  December 16, 2013                    /s/ Jeffrey S. Patterson
                                                                  Jeffrey S. Patterson

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST ......................................................... i

TABLE OF AUTHORITIES ........................................................ vii

STATEMENT OF RELATED CASES.................................................. xii

JURISDICTION ............................................................... 1

INTRODUCTION ............................................................... 2

COUNTERSTATEMENT OF THE ISSUES....................................... 5

COUNTERSTATEMENT OF THE FACTS ........................................ 5

SUMMARY OF THE ARGUMENT................................................. 12

STANDARD OF REVIEW ...................................................... 15

ARGUMENT .................................................................. 15

I.     THE DISTRICT COURT'S CLAIM CONSTRUCTION
SHOULD BE AFFIRMED ....................................................... 15

     A.    The District Court Properly Construed The Terms In The
Final Judgment ............................................................ 15

          1.    In The '819 Patent, "Transaction" Means A
Commercial Exchange ....................................................... 16

          2.    In The '819 Patent, "Fluid Container" Means A
Reservoir For Storing Fluid ................................................ 22

          3.    In The '819 Patent, "Fluid Delivery System"
Means A System That Transfers Fluid From An
External Source To Fluid Containers .................................... 24

     B.    Rydex's Meritless Arguments Concerning Terms Not
Included In The Final Judgment Are Not Properly Before
This Court .............................................................. 27

**TABLE OF CONTENTS—Continued**

Page

II.    THE DISTRICT COURT CORRECTLY DETERMINED
       THAT CLAIMS 39 AND 40 IMPERMISSIBLY
       BROADENED THE SCOPE OF CLAIM 22 ............................................ 31

III.   RYDEX'S OBJECTIVELY FRIVOLOUS ARGUMENTS
       WARRANT SANCTIONS UNDER RULE 11 ........................................ 37

CONCLUSION ................................................................................................ 44

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

CASES:

*AK Steel Corp.* v. *Sollac,*
   344 F.3d 1234 (Fed. Cir. 2003)................................................................33, 34

*American Piledriving Equip., Inc.* v. *Geoquip, Inc.,*
   637 F.3d 1324 (Fed. Cir. 2011)......................................................................34

*Anderson* v. *Int'l Eng'g & Mfg., Inc.,*
   160 F.3d 1345 (Fed. Cir. 1998).........................................................21, 35, 41

*Astrazeneca LP* v. *Apotex, Inc.,*
   633 F.3d 1042 (Fed. Cir. 2010)......................................................................18

*Baran* v. *Med. Device Techs.,*
   616 F.3d 1309 (Fed. Cir. 2010)......................................................................29

*Brown Shoe Co.* v. *United States,*
   370 U.S. 294 (1962)......................................................................................28

*Cardiac Pacemakers Inc.* v. *St. Jude Med., Inc.,*
   296 F.3d 1106 (Fed. Cir. 2002)......................................................................30

*Copeland* v. *Wasserstein, Perella & Co.,*
   278 F.3d 472 (5th Cir. 2002)..........................................................................42

*Creo Prods., Inc.* v. *Presstek, Inc.,*
   305 F.3d 1337 (Fed. Cir. 2002)...............................................................15, 35

*Cybor Corp.* v. *FAS Techs., Inc.,*
   138 F.3d 1448 (Fed. Cir. 1998) (en banc) ......................................................15

*Dethmers Mfg. Co., Inc.* v. *Automatic Equip. Mfg. Co.,*
   272 F.3d 1365 (Fed. Cir. 2001)......................................................................28

*Eon-Net LP* v. *Flagstar Bancorp,*
   653 F.3d 1314 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 2391 (2012)..13, 25, 38

*Every Penny Counts, Inc.* v. *Am. Express Co.,*
   563 F.3d 1378 (Fed. Cir. 2009)...............................................................23, 26

vii

# TABLE OF AUTHORITIES—Continued

Page

*Gonzales-Servin* v. *Ford Motor Co.*,
   662 F.3d 931 (7th Cir. 2011).............................................................33

*Hockerson–Halberstadt, Inc.* v. *Converse Inc.*,
   183 F.3d 1369 (Fed. Cir.1999).........................................................35

*ICU Med., Inc.* v. *Alaris Med. Sys., Inc.*,
   558 F.3d 1368 (Fed. Cir. 2009).........................................25, 33, 41

*In re Freeman*,
   30 F.3d 1459 (Fed. Cir. 1994).....................................31, 32, 35, 41

*In re NTP, Inc.*,
   654 F.3d 1268 (Fed. Cir. 2011).......................................................36

*Interactive Gift Express, Inc.* v. *Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001).......................................................20

*Jang* v. *Boston Sci. Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008).......................................................27

*Judin* v. *United States*,
   110 F.3d 780 (Fed. Cir. 1997).....................................................37, 43

*Kraft Foods, Inc.* v. *Int'l Trading Co.*,
   203 F.3d 1362 (Fed. Cir. 2000).........................................14, 33, 34

*Laitraim Corp.* v. *Rexnord, Inc.*,
   939 F.2d 1533 (Fed. Cir. 1991).......................................................15

*MarcTec, LLC* v. *Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012).........................................................40

*Marine Polymer Techs., Inc.* v. *HemCon, Inc.*,
   672 F.3d 1350 (Fed. Cir. 2012) (en banc) ......................................21

*Mass. Inst. of Tech.* v. *Abacus Software*,
   462 F.3d 1344 (Fed. Cir. 2006).......................................................28

**TABLE OF AUTHORITIES—Continued**

Page

*Multiform Desiccants Inc.* v. *Medzam, Ltd.*,
  133 F.3d 1473 (Fed. Cir. 1998).......................................................14

*Nomos Corp.* v. *Brainlab USA, Inc.*,
  357 F.3d 1364 (Fed. Cir. 2004).......................................................16

*O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co. Ltd.*,
  521 F.3d 1351 (Fed. Cir. 2008)................................................*passim*

*Oakley* v. *Sunglass Hut Int'l*,
  316 F.3d 1331 (Fed. Cir. 2003).......................................................35

*Pfizer, Inc.* v. *Ranbaxy Labs. Ltd.*,
  457 F.3d 1284 (Fed. Cir. 2006).......................................................34

*Phillips* v. *AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..................................... 16, 25, 31, 40

*Predicate Logic, Inc.* v. *Distributive Software, Inc.*,
  544 F.3d 1298 (Fed. Cir. 2008)................................................*passim*

*Quad Environmental Techs. Corp.* v. *Union Sanitary Dist.*,
  946 F.2d 870 (Fed. Cir. 1991).......................................................36

*Quantum Corp.* v. *Rodime, PLC*,
  65 F.3d 1577 (Fed. Cir. 1995).......................................................35, 41, 42

*Raylon, LLC* v. *Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 94 (2013)...........*passim*

*Refac Int'l, Ltd.* v. *Hitachi, Ltd.*,
  921 F.2d 1247 (Fed. Cir. 1990).......................................................37, 43

*S. Bravo Sys., Inc.* v. *Containment Techs. Corp.*,
  96 F.3d 1372 (Fed. Cir. 1996).......................................................43

*SanDisk Corp.* v. *Kingston Tech. Co., Inc.*,
  695 F.3d 1348 (Fed. Cir. 2012).......................................................13, 27, 28

ix

## TABLE OF AUTHORITIES—Continued

Page

*Signtech USA, Ltd.* v. *Vutek, Inc.*,
   174 F.3d 1352 (Fed. Cir. 1999)..................................................................29

*Thermalloy, Inc.* v. *Aavid Eng'g., Inc.*,
   121 F.3d 691 (Fed. Cir. 1997).......................................................35

*Thorner* v. *Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012).....................................................28

*Tillotson, Ltd.* v. *Walbro Corp.*,
   831 F.2d 1033 (Fed. Cir. 1987).....................................................32

*Total Containment, Inc.* v. *Environ Prods., Inc.*,
   106 F.3d 427 (Fed. Cir. 1997)...............................................41, 42

*Verizon Svcs. Corp.* v. *Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)........................................18, 19, 25

*View Eng'g, Inc.* v. *Robotic Vision Sys. Inc.*,
   208 F.3d 981 (Fed. Cir. 2000).......................................................37

*Whitehead* v. *Food Max of Miss., Inc.*,
   332 F.3d 796 (5th Cir.2003) (en banc) ........................................38

STATUTES:

28 U.S.C. § 1295(a)(1)..........................................................................2

28 U.S.C. § 1338(a) ..............................................................................1

35 U.S.C. § 305 .........................................................................*passim*

RULES:

Fed. R. Civ. P. 11......................................................................*passim*

Fed. R. Civ. P. 11(b)(2).............................................................4, 38, 43

Fed. R. Civ. P. 32.1(d) .......................................................................42

## TABLE OF AUTHORITIES—Continued

Page

OTHER AUTHORITIES:

*Merriam-Webster's Collegiate Dictionary* (11th Ed. 2007) ...................................16

*Webster's Third New International Dictionary* (1993)..........................................16

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding in the lower court was previously before this Court or any other appellate court.  Counsel for Defendants-Cross Appellants are not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

On September 12, 2012, Toyota and Subaru of America, Inc. filed an *ex parte* reexamination request with the U.S. Patent & Trademark Office directed towards claims 22 and 38 of the patent at issue here, U.S. Patent No. 5,204,819.  JA1000.  On September 24, 2013, the USPTO issued a final Office Action rejecting claims 22 and 38 of the '819 Patent.  JA1044, JA1054.  On November 25, 2013, the patent owner, Appellant Rydex, Ltd., filed a notice of appeal.  JA1055.

IN THE

# United States Court of Appeals
# for the Federal Circuit

————————

RYDEX, LTD.,

Plaintiff-Appellant,

v.

FORD MOTOR COMPANY and MAZDA MOTOR OF AMERICA, INC.
(doing business as Mazda North American Operations),

Defendants-Cross Appellants,

and

TOYOTA MOTOR SALES, U.S.A., INC.,

Defendant-Cross Appellant,

and

NISSAN NORTH AMERICA, INC.,

Defendant-Cross Appellant,

and

AMERICAN HONDA MOTOR CO., INC. and SUBARU OF AMERICA, INC.,

Defendants.

————————

Appeals from the United States District Court
for the Southern District of Texas in
Case No. 11-CV-0122
Judge Vanessa D. Gilmore

————————

**BRIEF FOR DEFENDANTS-CROSS APPELLANTS**

————————

**JURISDICTION**

The District Court had jurisdiction in this patent case under 28 U.S.C.

§ 1338(a).  The District Court entered final judgment on May 21, 2013.  JA59.

Rydex filed a notice of appeal on June 20, 2013. JA116. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## INTRODUCTION

In 1993, Rydex's founder received a patent for a device designed to ensure that gas paid for with a company credit card goes into only the company's own vehicles. The device does so by preventing a gas pump from dispensing fuel until the identity of the vehicle receiving the fuel, the identity of the person doing the refueling, or both, can be verified. The patent is thus aimed at deterring fuel theft.

This case concerns Rydex's attempt to convert its patent into one aimed at deterring car theft. Over the last two decades, the auto industry has adopted an ignition system that prevents auto theft by disabling the flow of gas to a car's engine unless its key is in the ignition. Needless to say, the terms of Rydex's original patent had nothing to do with this different device, which works in a different way to solve a different problem. But that didn't deter Rydex's founder.

In 2004 he had the patent reexamined, adding new claims that aimed to bring today's ignition systems within the patent's scope. This required some ingenuity. For example, the original patent requires verification before allowing "fluid delivery" *to* a "fluid container," such as a car's gas tank. But modern ignition systems prevent auto theft by blocking the flow of fluid *from* the tank to the car's engine. So the newly appended claims now say that the "fluid container"

2

is not, in fact, something that stores fuel, but rather the car's fuel lines, through which gas passes on its way from the tank to the engine.

With its revisionist patent in hand, Rydex filed suit against most of the car companies doing business in the United States. This gambit paid off against a few defendants, who settled rather than pay the high costs of defending a patent suit. But for those who bore the expense of seeing the case through to final judgment, they received only partial vindication. On the merits, they won hands down. For good reason: Section 305 of the Patent Code expressly forbids a patentee from expanding a patent's scope during reexamination. And without the post hoc language that Rydex added in 2004, there is no plausible reading of Rydex's patent that would apply to a car's ignition system. The District Court's thorough claim construction order thus left Rydex no choice but to stipulate to a judgment of non-infringement.

That otherwise sweeping victory provided the defendants with only partial vindication because they still had to incur substantial legal fees over the course of two years to defeat this frivolous suit. To remedy that inequity and to deter future frivolous patent litigation, the defendants sought sanctions under Federal Rule of Civil Procedure 11. But the District Court summarily denied the request without explanation.

The court's "failure to consider these arguments was an abuse of discretion." *Raylon, LLC* v. *Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012), *cert. denied*, 134 S. Ct. 94 (2013). That alone is reason for this Court to vacate the Rule 11 denial. But the Court should go further and reverse the denial of sanctions outright, remanding only for a proper calculation. That is the course this Court followed in *Raylon*. And here, just as in *Raylon*, "[t]his is a clear instance where no objectively reasonable litigant * * * would believe its claim construction could succeed; therefore [Rydex's] claim construction is frivolous and thus sanctionable under Rule 11(b)(2)." *Id.* at 1369.

Although reversing the sanctions determination is important to remedy the injustice the defendants themselves incurred, this Court's ruling will have far broader implications. Barring a sanctions order, Rydex will walk away from this litigation with the early settlements it coaxed, little worse for the wear of having the District Court puncture its absurd arguments. That gives non-practicing entities like Rydex little incentive not to launch more vexatious litigation, further sapping the resources of the courts, the defendants, and the patent system. To change that kind of cynical calculus, Rule 11 mandates sanctions for advancing such frivolous legal claims. Under this Court's precedent, Rydex's attempt to squeeze a profit out of plainly meritless infringement claims more than warrants their imposition.

4

## COUNTERSTATEMENT OF THE ISSUES

1.    Whether the District Court correctly construed the four claim terms included in the final judgment.

2.    Whether the District Court correctly held that dependent claims 39 and 40, which were added during reexamination, violated 35 U.S.C. § 305 by impermissibly broadening the scope of independent claim 22.

3.    Whether the District Court erred as a matter of law by summarily denying sanctions under Rule 11 of the Federal Rules of Civil Procedure, even though the patent holder had pursued patently frivolous claim constructions.

## COUNTERSTATEMENT OF THE FACTS

**The '819 Patent.**  In 1990, Michael Ryan, the President and CEO of Rydex, sought a patent for a system designed to address a simple problem.   Many businesses own company vehicles that employees refuel using a company credit card.  This creates a risk of theft:  employees might also use the company card to put gas in their personal car, or someone else's.  JA2.

Mr. Ryan tried to solve this problem using "modules" placed on the gas pump and carried by the person purchasing fuel and/or placed on the vehicle in question.  Communicating by radio frequency (RF) technology, these modules ensure that the pump will dispense fuel only to the approved person and/or car, and

5

can record details of the transaction, such as the amount of fuel dispensed and its price.  The District Court used a simple sketch to illustrate the system:



JA2-3.

Mr. Ryan received U.S. Patent No. 5,204,819 for this apparatus in 1993. JA118.  In 2009, Mr. Ryan assigned all rights in the '819 patent to Rydex.  JA1. The record does not indicate that either Mr. Ryan or Rydex currently practices the patent.

**The Advent Of Electronic Ignition Systems.**  In the meantime, the auto industry was improving the keys that drivers have long used to unlock and start their vehicles.  Car keys evolved from simple pieces of metal to electronic fobs that could communicate with the car using RF technology, originally just to lock and unlock the car from a distance.  A lock and key may be among the oldest of anti-theft devices, but electronic fobs soon allowed car manufacturers to provide additional protection:  in modern ignition systems, the key's RF chip regulates whether the engine's internal fuel pump will send gas from the tank to the engine.

6

Without the key, the fuel pump won't send gas to the engine, and so someone who does not have the key cannot drive away with the car.  *See* JA3-4.

**The 2004 Reexamination Of The Original Patent.**  In 2004, Mr. Ryan sought reexamination of the '819 patent.  He and his prosecuting attorney discussed "products being sold by automotive companies," including the "vehicle immobilization systems" that prevented gas from flowing to a car's engine.  JA258.  As that attorney put it, the goal was to ensure the scope of the reexamined claims was "as broad as" possible in order "to try to cover" the auto companies' products.  *Id*.  As part of this strategy, claim 22 was reconfirmed without modification, but the patent was festooned with a host of new dependent claims.  For example, new dependent claim 39 describes the "fluid delivery device" in claim 22 not as the specification describes it—as a gas station pump—but instead as the internal "fuel pump of [a] vehicle."  JA144, '819 Patent Reexamination Certificate, col. 4, ll. 58-59.  Likewise, claim 22's "fluid container" is reimagined in claim 39 not to be the car's gas tank but instead "the fuel lines leading to an engine of the vehicle."  *Id*. col. 4, ll. 59-61.

**Rydex Sues Toyota.**  In 2007, Rydex and Mr. Ryan contacted Toyota regarding the reexamined '819 Patent.  *See* JA1061.  Later that year, Rydex and Ryan sued Toyota and Toyota Motor Corporation for infringing the '819 Patent in the U.S. District Court for the Southern District of Iowa.  *See* JA1074.  They

alleged that Toyota's vehicle anti-theft systems, contained entirely within the vehicle, infringed their patent for delivering fuel between a gas station fuel pump and a vehicle. *See* JA1074-1076. Toyota explained to Rydex and Ryan why Toyota's systems did not infringe their patent, and why the '819 Patent was invalid. *See* JA1079-82. Rydex and Ryan then voluntarily dismissed the complaint. *See* JA1107.

**Rydex Sues The Auto Industry.** About three years later, Rydex began the instant attempt to enforce the '819 patent against nearly every car company in America. *See* JA1108-09 (naming as defendants General Motors, Ford, Chrysler, Toyota, Honda, Nissan, Mercedes, BMW, Hyundai, Kia, Mazda, Mitsubishi, Saab, Subaru, and Suzuki). Its theory: the auto industry's use of electronic keys to prevent car theft infringed Rydex's system for preventing gas theft at the pump. *See* JA1111-12.

Several defendants settled early, avoiding substantial defense costs. *See* JA96, 105-106 (Docket Entries 128, 248, 262). A few sought rapid summary judgment, which Rydex opposed. The District Court denied that effort as premature. JA107 (Docket Entry 275). Both sides conducted discovery. After over a year and a half of costly litigation, the District Court held a *Markman* hearing. JA1.

8

**The District Court's Claim Construction.** The parties disputed the meaning of 11 terms, nine in claim 22 and two in the dependent claims that Rydex added during the reexamination. The District Court's construction of four terms in claim 22 forms the basis for the stipulated judgment appealed here. Those terms are highlighted below in the text of claim 22:

> Apparatus for controlling and memorializing a **fluid delivery transaction** requested by a person between a **fluid container** and a **fluid delivery system**, comprising:
>
> a. personal identification means for generating an identification [signal.identifying] *signal identifying* the person;[1]
>
> * * *
>
> f. wherein **information regarding the fluid delivery transaction is stored** at said fluid delivery system information means.

JA140, '819 Patent col. 20, l. 61 to col. 22, l. 10; JA 59-61, Final Judgment 1-3.

The District Court construed the term "fluid delivery transaction" to mean a "commercial exchange involving the delivery of fluid." JA22-24. It explained that the ordinary meaning of the word "transaction" contemplates a commercial exchange. It further noted that the patent specification describes features of the invention that plainly require a commercial exchange, such as recording " 'the

---

[1] The original patent contained the text in brackets, which all parties agree is a typographical error. *See* JA4 n.1. Upon reexamination, the PTO modified the text to read as above. *Compare* JA140, '819 Patent col. 20, l. 66, *with* JA144, '819 Reexamination Certificate col. 3, l. 5.

price of fluid,' " identifying the recipient for " 'billing purposes,' " allowing automatic " 'payment,' " and allowing a " 'fluid delivery transaction that can be wholly controlled by an absent purchaser of the fluid.' " *Id.* (quoting '819 Patent col. 1, l. 38, col. 2, ll. 5, 8, 22-23).   Following the same reasoning, the court also construed the word "transaction" in the term "information regarding the fluid delivery transaction is stored" to refer to a commercial exchange.  JA45-46.

The court interpreted "fluid container" to mean a "reservoir for storing fluid." It reasoned that this meaning was consistent with the plain meaning of the term and the specification, which, for example, refers to " 'a container such as a fuel or other liquid storage tank.' "  JA25-26 (quoting '819 Patent col. 1, ll. 5-10).

As for "fluid delivery system" the District Court construed that term to mean "[a] system that transfers fluid from an external source to fluid containers."  JA26. The court observed that the patent repeatedly describes "the present invention" with reference to a "delivery nozzle" that is inserted into the vehicle to allow fluid delivery and then removed.  It further noted that other parts of the specification envisioned " 'fuel delivered *to* the vehicle' " from an external source, not from one part of the vehicle to another.  JA26-28 (quoting '819 Patent col. 3, ll. 20-22, emphasis added by District Court).

The District Court also determined that dependent claims 39 and 40 had improperly been added to the patent in the 2004 reexamination.  It explained that

10

under 35 U.S.C. § 305, new claims that expand a patent's existing claims cannot be added during reexamination.  JA18.  And it found that claims 39 and 40 tried to do just that, introducing "brand new concepts not previously disclosed in the original patent: the notion that the 'fluid delivery system' could be 'a fuel pump of the vehicle' and the 'fluid container' could be the vehicle's 'fuel lines.' " JA19.  It thus held that claims 39 and 40 were invalid, citing *Predicate Logic, Inc.* v. *Distributive Software, Inc.*, 544 F.3d 1298, 1302 (Fed. Cir. 2008) ("Claims that are impermissibly broadened during reexamination are invalid * * * .").  JA19-21.

**Proceedings After The *Markman* Order.**  After the District Court's order, several defendants agreed to be dismissed from the case, avoiding further expense but forgoing their right to seek costs or sanctions.  *See* JA112-113, Docket Entries 337, 339, 342, 346, 347.  The remaining defendants moved for sanctions, arguing that Rydex continued to advance a frivolous legal position it had devised solely in the hopes of extracting a quick settlement for less than the cost of defending the suit.  The District Court issued a one-sentence order denying the motion without explanation.  JA1119.

The parties then filed a joint stipulation for entry of final judgment.  The District Court issued a final judgment that the defendants' products do not infringe the '819 patent based on the court's construction of the four terms discussed above and the court's invalidation of claims 39 and 40.  JA59-61.  Rydex filed a notice of

11

appeal, seeking to challenge the District Court's claim construction. JA116. Ford, Mazda, Nissan, and Toyota cross-appealed the denial of sanctions. JA116.

## SUMMARY OF THE ARGUMENT

1. The District Court correctly interpreted the relevant terms in claim 22. Rydex's principal objection is that the District Court's construction of those terms—terms set forth in an independent claim—cannot be correct, because they would exclude devices covered by claims 39 and 40—dependent claims that Rydex added years later during reexamination. But that gets the analysis backwards. Under 35 U.S.C. § 305, claims added during reexamination cannot expand the scope of the original patent. So before consulting those post hoc additions, it is important to establish the metes and bounds of claim 22 as it first issued. And nothing in the plain language or specification of that claim supports Rydex's proffered constructions, as the District Court explained.

Of course, "proffered constructions" is giving Rydex too much credit. As it argued before the District Court, Rydex here on appeal insists that the jury, rather than the court, should have resolved the parties' disputes about the scope of these claim terms. But Rydex never squares that argument with this Court's recurrent holding that "[w]hen the parties raise an actual dispute regarding the proper scope of * * * claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd.* v. *Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

Instead, it seeks to open new opportunities for ploys like its own, allowing non-practicing entities to extract settlements from companies unwilling to accept a small but conceivable risk that a jury just might accept a claim interpretation that a court would reject as a matter of law.

Rydex repeatedly tries to discredit the District Court's constructions by suggesting that they improperly rely on a single embodiment of the invention. But that simply ignores the language of the patent and the court's order. The court relied on portions of the specification describing "features of the present invention," and as this Court has explained, such "statements about the invention are not limited to specific embodiments or examples but describe and define the invention overall." *Eon-Net LP* v. *Flagstar Bancorp*, 653 F.3d 1314, 1321-22 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 2391 (2012).

Rydex also raises meritless arguments concerning other claim terms that were *not* included in the stipulated final judgment. This Court need not bother to dispel those arguments because they "do not affect the final judgment entered by the court" below, and thus, "they are not reviewable." *SanDisk Corp.* v. *Kingston Tech. Co., Inc.*, 695 F.3d 1348, 1354 (Fed. Cir. 2012). And in any event, they are just as flawed as Rydex's other arguments.

2. The District Court also properly invalidated claims 39 and 40. And the best evidence of that is Rydex's own claim construction arguments. By

demonstrating that claims 39 and 40 expand the scope of the original patent, Rydex shows that these claims could not have been validly added during reexamination. Nor can Rydex find solace in the doctrine of claim differentiation.  As this Court has often emphasized, "claim differentiation can not broaden claims beyond their correct scope."  *Kraft Foods, Inc.* v. *Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (quoting *Multiform Desiccants Inc.* v. *Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) (alteration omitted)).

3.  For the reasons summarized above and explained in detail below, Rydex could never have prevailed before a reasonable jurist.  But it did not have to; its profit was assured not by the merit of its arguments, but because the sheer breadth of its claims meant the risk and expense of resisting them would induce at least a few settlements.  Fortunately, Congress has established a mechanism to deter this sort of vexatious, opportunistic litigation:  Rule 11 is tailor-made for this case. Rydex's objectively baseless contentions required the District Court to impose sanctions, as this Court held in the strikingly similar case of *Raylon LLC* v. *Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012).

The District Court nevertheless summarily denied sanctions without explanation.  That alone is reversible error under *Raylon*.  This Court should follow its decision in *Raylon*, reverse the District Court's denial of sanctions, hold that Rydex's arguments were objectively meritless and warrant Rule 11 sanctions, and

14

remand for a proper calculation.  To do otherwise would invite yet more frivolous patent litigation, which forces companies making real goods to divert their resources away from tangible production and into needless litigation-defense.

## STANDARD OF REVIEW

This Court reviews claim construction de novo.  *Cybor Corp.* v. *FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (en banc).  "Whether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction, which this court reviews de novo."  *Creo Prods., Inc.* v. *Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002).  This Court reviews the District Court's decision regarding Rule 11 sanctions for an abuse of discretion.  *Raylon*, 700 F.3d at 1367.

## ARGUMENT

## I.    THE DISTRICT COURT'S CLAIM CONSTRUCTION SHOULD BE AFFIRMED.

### A.    The District Court Properly Construed The Terms In The Final Judgment.

The stipulated judgment of non-infringement rests on the District Court's construction of four terms in claim 22 of the '819 Patent.  For Rydex to prevail here on appeal, it must show that each and every one of those constructions was wrong, "[s]ince the failure to meet a single limitation is sufficient to negate infringement of the claim."  *Laitram Corp.* v. *Rexnord, Inc.*, 939 F.2d 1533, 1535

(Fed. Cir. 1991); *see*, *e.g.*, *Nomos Corp.* v. *Brainlab USA, Inc.*, 357 F.3d 1364, 1367 n.1 (Fed. Cir. 2004).  Rydex, however, offers no plausible reason to question any of the four straightforward interpretations reached by the court below.

> 1.    *In The '819 Patent, "Transaction" Means A Commercial Exchange.*

Two terms covered by the stipulated judgment use the word "transaction": "fluid delivery transaction" and "information regarding the fluid delivery transaction is stored."  For both terms, the District Court interpreted "transaction" to refer to a "commercial exchange."  JA23, 46.  No surprise there.  Dictionaries, after all, rank that as the primary definition for the word "transaction."  *See*, *e.g.*, *Merriam-Webster's Collegiate Dictionary* 1327 (11th Ed. 2007) ("1a: something transacted; *esp*: an exchange or transfer of goods, services, or funds"); *Webster's Third New International Dictionary* 2425 (1993) (defining "transact" as "1: to prosecute negotiations: carry on business;" and "transaction" as "1: an act, process, or instance of transacting").

More important, the patent's specification confirms that the inventor had no intention of deviating from that customary meaning.  That is important because the specification "is the single best guide to the meaning of a disputed term."  *Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).  And in the '819 patent, the specification leaves nothing to dispute; it consistently describes a fluid

16

delivery transaction as a commercial exchange.  The District Court recognized this,

and cataloged many of the most revealing portions of the specification:

- "The present invention" records "the price of fluid" when "completing a fluid delivery transaction." '819 Patent col. 1, ll. 30-46.

- "Another feature of the present invention" identifies "the fluid container for security and billing purposes." *Id.* col. 2, ll. 3-6.

- "A further feature of the present invention" permits "automatic payment for delivered fluid." *Id.* col. 2, ll. 8-9.

- "Still another feature" facilitates and records "a fluid delivery transaction that can be wholly controlled by an absent purchaser of the fluid." *Id.* col. 2, ll. 21-23.

*See* JA22-23.  Those are hardly the only examples.  *See*, *e.g.*, JA138, '819 Patent,

col. 15, ll. 1-3 (describing "the generation of invoices and the like so that a hard

copy of the fuel delivery transaction can be left with the customer"); *id.* JA131, col.

1, ll. 23-24 ("to assure that the appropriate vehicle receives the purchased fuel").

In short, the original patent's text leaves no doubt that the fluid delivery

transactions it contemplates are commercial exchanges.

Rydex calls this interpretation "too narrow."  Br. 12.  But it offers no reason

to believe that a person of ordinary skill in the art—or anyone, for that matter—

would read the specification as describing anything other than a commercial

exchange.  Instead, it argues that because the patent does not contain the specific

word "commercial,"[2] the word "transaction" could have a broader meaning.  Br. 14.

This Court has rejected such arguments before, explaining that "when a patentee

uses a claim term throughout the entire patent specification, in a manner consistent

with only a single meaning, he has defined that term by implication."  *Astrazeneca*

*LP* v. *Apotex, Inc.*, 633 F.3d 1042, 1052 (Fed. Cir. 2010) (internal quotation marks

and alteration omitted).  Thus, to define a claim term, a "specification need not

reveal such a definition explicitly."  *Id.* at 1051.

Here it is particularly clear that the specification limits transactions to

commercial exchanges, because it describes such exchanges as features of the

present invention, not merely as possible embodiments of the invention.  That

matters because "[w]hen a patent thus describes the features of the 'present

invention' as a whole, this description limits the scope of the invention."  *Verizon*

*Svcs. Corp.* v. *Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)

(collecting cases).  In *Verizon*, for example, this Court construed a claim term that

did not expressly state the limitation that the defendant urged.  But the

specification described "the present invention" using the limitation in question.

This Court explained that the claim term therefore "must be limited" by that

---

2       Even this assertion is incorrect.  When describing the very problem
addressed, the patent explains that vehicles "operated as part of a *commercial*
enterprise" need "detailed and accurate records" to "account properly for the use of
the vehicle and to support income tax return filings."  JA131, '819 Patent col. 1,
ll. 15-19 (emphasis added).

description.  *Id.*  So too here:  in addition to the word "transaction" itself indicating a commercial exchange, the specification imposes that limit by describing "the present invention" as involving commercial fuel delivery exchanges.

Rydex, however, says the District Court's straightforward construction cannot be correct because it would exclude two claims Rydex added to the patent during the reexamination.  To be sure, Rydex is right that "claim 39 explicitly discloses an embodiment that is not 'commercial' in nature."  Br. 14.  And claim 40 incorporates claim 39.  *See* JA144, '819 Patent Reexamination Certificate, col. 4, l. 62.  But Rydex is wrong to think that this means that the District Court erred in reading claim 22—on which claims 39 and 40 depend—to reach only commercial exchanges.  *See* Br. 12-14.

To begin with, Rydex itself has had some difficulty making up its mind on this score.  At the *Markman* hearing it expressly and repeatedly told the District Court that it was *not* relying on these dependent claims to support its construction of the terms in claim 22.  *See* JA1156-57, JA1196, *Markman* Hr'g Tr. 36:7 to 37:10, 135:2 to 135:21; JA1217, Rydex *Markman* Presentation at 13.  Now the dependent claims it added during the reexamination form the mainstay of its arguments that the District Court misread claim 22.  *See* Br. 5, 12-16.  Rydex's inability to offer a consistent view reflects a simple problem:  there is not, and has never been, a plausible argument that Rydex's patent covers the accused products.

19

And Rydex should now be judicially estopped from attacking the District Court for failing to address the very argument Rydex told the District Court it was not pursuing. *See*, *e.g.*, *Interactive Gift Express, Inc.* v. *Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001). In any event, reversing course cannot help Rydex. Its about-face on the relevance of claims 39 and 40 marches straight into a contrary statute, precedent, and common sense.

Under Section 305 of the Patent Code, "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." 35 U.S.C. § 305. Therefore, by statute, claims 39 and 40 cannot broaden the scope of claim 22. Yet this is exactly how Rydex seeks to use them: to give claim 22 a more expansive reading than the original patent would have enjoyed without those later-added claims. Rydex does not cite a single case in which this Court (or any court) has used a later-added claim to support a broader interpretation of an original claim. For good reason: doing so would contradict the plain language of § 305.

Section 305's categorical prohibition on doing what Rydex seeks to do here also makes good sense. If the rule were otherwise, patent holders could manipulate the reexamination process by inserting language in new claims designed to reinterpret old ones, retroactively expanding their scope. That would leave "the door open for gross injustice where a third party, having already begun to make,

use, or sell a given article, finds its previously lawful activities rendered newly infringing under a modified patent." *Marine Polymer Techs., Inc.* v. *HemCon, Inc.*, 672 F.3d 1350, 1361 (Fed. Cir. 2012) (en banc) (citation and internal quotation marks omitted).

The flaw in Rydex's argument, however, goes deeper still. With all the weight Rydex puts on claim 39 to prop up its construction of claim 22, claim 39 itself crumbles under § 305's invalidity doctrine. As this Court has held, new claims added during reexamination that would expand a patent's scope "are invalid." *Predicate Logic*, 544 F.3d at 1302. As the District Court explained, claim 22 plainly used "fluid delivery transaction" to mean a commercial exchange. If new claim 39 includes non-commercial exchanges, that does not show a flaw in the District Court's interpretation. It shows that claim 39 is invalid. *See, e.g.*, *Anderson* v. *Int'l Eng'g & Mfg., Inc.,* 160 F.3d 1345, 1349-50 (Fed. Cir. 1998) (determining that reexamination claims did not fall within the language of an original independent claim, and were therefore invalid); *see also infra* 31-37 (addressing the District Court's invalidity decision). The District Court's construction of "fluid delivery transaction" and "information regarding the fluid delivery transaction is stored" should be affirmed.

    2.    *In The '819 Patent, "Fluid Container" Means A Reservoir For Storing Fluid.*

In the District Court, the parties disputed whether the term "fluid container" applies only to devices for storing fluids—such as a gas tank—or can also include conduits through which fluids pass on their way somewhere—such as a car's fuel lines, or, for that matter, a straw. *See* JA1194-95. The District Court sensibly held that a "fluid container" means a "reservoir" where fluids are actually stored, not the conduits that take them there. JA25. On appeal, Rydex has very little to say about how the District Court construed the claim. Instead, citing this Court's decision in *O2 Micro*, Rydex insists that the dispute over the meaning of "fluid container" should have been resolved by a jury, not the District Court. Br. 15.

But Rydex gets *O2 Micro* exactly backwards. Under that decision, the District Court was *required* to resolve the scope of "fluid container" as a matter of law during claim construction. In *O2 Micro*, the parties disputed the meaning of the claim term "only if." Sounding the same refrain Rydex sings in its brief, the patentee in *O2 Micro* characterized the term there as an ordinary, nontechnical phrase whose meaning would be clear to lay jurors. *Compare* 521 F.3d at 1360 *with* Br. 15. The district court agreed, finding that the "term 'only if' needs no construction." 521 F.3d at 1361. This Court reversed, holding that "[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *Id.* at 1360. And that remains true even if

a word or phrase has an "ordinary" meaning because the court still must determine the scope of the term in the context of the patent. *Id.* at 1361.

Nor did *O2 Micro* announce a radical new rule of decision on this score. To the contrary, this Court cited a host of cases in which courts properly construed such nontechnical terms as "board," "golden brown," and "cover." *Id.* at 1361-62. This Court thus cites *O2 Micro* when interpreting seemingly nontechnical, readily understood terms, reaffirming that it is the federal courts' "obligation * * * to ensure that questions of the scope of the patent claims are not left to the jury." *Every Penny Counts, Inc.* v. *Am. Express Co.*, 563 F.3d 1378, 1382-83 (Fed. Cir. 2009) (meaning of "excess cash").

The District Court found it easy to discharge that obligation, dispatching Rydex's theory in a paragraph. *See* JA25-26. Rightly so. Straws and fuel lines are no more fluid containers than gun barrels are bullet containers. Rydex's complaint itself acknowledges that containers and conduits are very different things and that fuel lines belong in the second category, referring to "a container, such as a vehicle fuel tank or other fluid storage tank, and a fluid delivery system, such as a fuel pump *and fuel lines*." JA1262, Compl. ¶ 20 (emphasis added). That mirrors the patent's usage, which describes "a container, such as a fuel or other fluid storage tank." JA131, '819 Patent, col. 1, ll. 9-10. By contrast, when the specification refers to conduits such as hoses and nozzles, it does not suggest that

23

they might be considered containers. *See*, *e.g.*, *id.*, JA132, col. 4, ll. 37-45; col. 4, ll. 50-58.

Other than another futile invocation of the late-breaking (and invalid) claim 39, Rydex offers no reason to question the District Court's construction. *See* Br. 15. As we have already explained, that tardy—and blatantly improper—codicil to the original patent cannot distort the clear meaning of a term in the original patent. *Supra* 19-21. Rydex's near-comical bid to recast fuel lines as fluid containers fails.

> 3. *In The '819 Patent, "Fluid Delivery System" Means A System That Transfers Fluid From An External Source To Fluid Containers.*

In construing "fluid delivery system," the District Court read the term to contemplate transfers from an external source. The patent's specification amply supports that reading. It describes two "feature[s] of the present invention" using a "fluid delivery nozzle." JA131, '819 Patent, col. 1, ll. 67 to col. 2, l. 2; col. 2, ll. 24-26. As the District Court explained, these features show that the nozzle is external to the "fluid container," because it can be inserted into it, and removed from it. JA27. The remainder of the specification goes on to give examples of fluid deliveries *to* a vehicle, not within it. *See*, *e.g.*, JA131, '819 Patent col. 1, ll. 55-58 ("[w]hen the fluid delivery system is delivering, e.g., a petroleum-based fuel to a vehicle"); *id.* JA132, col. 3, ll. 20-22 ("fuel delivered to the vehicle"); *id.* JA133, col. 5, ll. 17-24 ("fuel delivery made to the truck tractor").

Rydex cannot airbrush all these damning statements from the specification by insisting, as it does, that they disclose only "a single, specific embodiment." Br. 16. That ignores what the specification actually says and what this Court's precedents have held. To begin with, the specification describes "the present invention" as requiring a fluid delivery nozzle that can be inserted and removed. That is critical because, as we have already explained, it is black-letter law that when "a patent thus describes the features of the 'present invention' as a whole," it does not merely illustrate one possible embodiment, it "limits the scope of the invention." *Verizon*, 503 F.3d at 1308 (collecting cases); *see, e.g.*, *Eon-Net*, 653 F.3d at 1322 ("These statements about the invention are not limited to specific embodiments or examples but describe and define the invention overall."). And while the District Court *also* listed a series of specification examples showing fluid delivery from external sources, that hardly helps Rydex. When a specification "repeatedly and uniformly" illustrates a term in a particular way, and "never suggests" any other possible embodiment, that too establishes how a person of ordinary skill in the art would "understand the claim term 'after reading the entire patent.' " *ICU Med., Inc.* v. *Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374-75 (Fed. Cir. 2009) (quoting *Phillips*, 415 F.3d at 1321).

Rydex does not identify any part of the original patent suggesting that a "fluid delivery system" might "deliver" fluid from one part of a vehicle to another.

25

Instead, it relies on the same flawed arguments refuted above. It claims no construction was necessary because the "plain and ordinary meaning of the term 'fluid delivery system' is clear." Br. 16. That argument is dubious standing alone and absurd in context. Rydex offers no reason to believe this seemingly technical term has an obvious everyday meaning. And this Court has held that phrases that really do have a common meaning, such as "only if" and "excess cash," nonetheless demand construction to establish their scope. *O2 Micro*, 521 F.3d at 1360-61; *Every Penny Counts*, 563 F.3d at 1382. Measured against those precedents, Rydex's soothing assurance that jurors would intuitively understand the scope of the term "fluid delivery system" is objectively frivolous (so frivolous, in fact, that it well warrants sanctions, as we explain later, *see infra* 37-43).

That leaves Rydex to trot out claim 39 again. Claim 39 describes the "fluid delivery system" as a car's internal fuel pump, which delivers fluid to the car's "fuel lines," themselves now rebranded as a "fluid container." JA144, '819 Patent Reexamination Certificate, col. 4, ll. 57-62. So Rydex is correct when it says that claim 39 cannot be reconciled with fluid delivery from an external source. But— also again—that does nothing to show that the District Court erred in construing the original terms of the patent. It simply demonstrates that claim 39—added more than a decade later—tried to expand the original scope of the patent, violating statute and precedent. *Supra* 19-21.

26

**B.    Rydex's Meritless Arguments Concerning Terms Not Included In The Final Judgment Are Not Properly Before This Court.**

The District Court's final judgment expressly rests on its construction of the four terms just discussed—and only those terms.  *See* JA59-61.  Yet Rydex now asks this Court to review four more terms nowhere mentioned in the stipulated judgment.  Br. 18-23.  It does so without even bothering to inform the Court that these terms lay outside the judgment, much less offering any explanation as to why the Court should address them.

Article III of the Constitution requires this Court to decline Rydex's invitation to review issues not included in the judgment below.  As this Court has recognized, "Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties."  *Jang* v. *Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008).  This Court therefore will not resolve claim construction issues "that do not actually affect the infringement controversy between the parties," because doing so would result in an impermissible "advisory opinion."  *Id.*; *see also SanDisk*, 695 F.3d at 1353 ("Without such a controversy, we lack Article III jurisdiction to decide these issues.").  Thus, "where, as here, a party's claim

construction arguments do not affect the final judgment entered by the court, they are not reviewable." *Id.* at 1354.[3]

Not that Rydex's superfluous arguments on these terms have any merit. Rydex begins its objections to terms outside the final judgment with "personal identification means for generating an identification signal identifying the person" who is requesting the fluid delivery transaction. JA29. Although this term refers to personal identification twice in 11 words, Rydex argues that the function it describes is not actually to "identify the person," but instead to determine "that the person is an authorized user." Br. 18-19. As the District Court explained, that

---

[3]     When an ambiguous final judgment leaves unclear whether the lower court's construction of a particular claim supports the judgment, this Court has sometimes reviewed the construction, while noting that it is "highly undesirable" to do so. *Mass. Inst. of Tech.* v. *Abacus Software,* 462 F.3d 1344, 1351 (Fed. Cir. 2006). Here, however, the judgment makes absolutely clear which terms support the final judgment, thus leaving no jurisdiction to review terms outside that judgment. *See SanDisk*, 695 F.3d at 1353-54. This Court also appears to have considered a term outside a final judgment when (1) both parties had stipulated that it could be reviewed, and (2) neither the parties nor this Court raised concerns about jurisdiction. *See Thorner* v. *Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365, 1368-69 (Fed. Cir. 2012). That though is not this case. The parties have not stipulated that these extraneous claims are fair game for this appeal and the appellees in this brief have now squarely challenged this Court's Article III jurisdiction to review them. And to the extent there's any tension between the earlier result in *Thorner* and the actual jurisdictional holding in *SanDisk*, the latter controls. *See Dethmers Mfg. Co., Inc.* v. *Automatic Equip. Mfg. Co.*, 272 F.3d 1365, 1378 (Fed. Cir. 2001) ("We are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed *sub silentio*.") (quoting *Brown Shoe Co.* v. *United States*, 370 U.S. 294, 307 (1962) (alterations omitted)).

interpretation ignores the patent's specification and prosecution history, which show that the invention verifies that the person is an authorized user *by* checking his identity. *See* JA30. Rydex's contrary effort to separate identification from authorization makes little sense. Anyone—a child, a roommate, a thief—might come into possession of the company gas card, but that hardly means he is an authorized user. Only by identifying the user (for example, by name or drivers' license number) does the device verify that the person requesting fluid delivery falls within the set of persons authorized to do so.

Next, Rydex quibbles with the District Court's construction of "information communication means linking said fluid delivery system information and said personal identification means." JA37. Rydex proposes to rewrite that claim language by effectively deleting "information communication" from the claim's function. But as the District Court explained, the plain language of Claim 22 discloses an "information communication means." JA38 . And this Court has repeatedly held that functional language preceding the word "means" is properly incorporated into the construction of the function in a means-plus-function claim. *See Baran* v. *Med. Device Techs.*, 616 F.3d 1309, 1317 (Fed. Cir. 2010); *Signtech USA, Ltd.* v. *Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed. Cir. 1999). Indeed, Rydex itself cites a case stating that a "court must construe the function of a means-plus-function limitation to *include the limitations contained in the claim language*."

29

*Cardiac Pacemakers Inc.* v. *St. Jude Med., Inc.,* 296 F.3d 1106, 1113 (Fed. Cir. 2002) (emphasis added) (cited at Br. 21-22).

Rydex also contests the District Court's construction of "for the transmission of operational energy for said personal identification means." JA43. According to Rydex, that term should not be limited to devices without independent power sources, such as batteries. But the District Court cataloged a host of references in the specification expressly stating that the component in question has no independent power source, JA43-44, and Rydex never explains why a reader skilled in the art would not take that language to mean exactly what it says.

The last of Rydex's superfluous arguments concerns the term "memory key." The District Court interpreted that term as "a memory module that is physically connected to a device to exchange data." JA46-48. Every example and embodiment in the patent supports that reading.[4] And as in its other arguments, Rydex suggests no reason that when read "in the context of the entire patent" the

---

[4]    *See, e.g.*, JA135, '819 Patent, col. 10, ll. 45-47 ("The operator inserts the memory key 22 into an appropriate receptacle * * * ."); *id.* JA136, col. 11, ll. 30-33 ("the 2K memory key 522 that must be inserted by the operator"); *id.* JA137, col. 13, ll. 18-20 ("Additionally, the vehicle identification code is written to the memory key 222 upon its insertion by the operator."); *id.* JA137, col. 14, ll. 42-44 ("The system may be overridden only when an authorized memory key is inserted * * * ."); *id.* JA132, col. 4, ll. 31-33 (memory key can be "a portable storage device such as a memory key available from Datakey Corporation in Burnsville, Minnesota.").

term could mean anything else "to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

## II.   THE DISTRICT COURT CORRECTLY DETERMINED THAT CLAIMS 39 AND 40 IMPERMISSIBLY BROADENED THE SCOPE OF CLAIM 22.

The District Court properly invalidated dependent claims 39 and 40 because they exceeded the scope of claim 22, on which they depend.  That is a clear-cut violation of 35 U.S.C. § 305.   That statute provides:  "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding."   A newly added claim enlarges the patent's scope if "it includes within its scope any subject matter that would not have infringed the original patent." *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994).  Because claims that do so violate § 305, they "are invalid." *Predicate Logic*, 544 F.3d at 1302.

The District Court had no difficulty determining that claims 39 and 40 failed this basic test.  As it explained, those claims introduced "brand new concepts not previously disclosed in the original patent: the notion that the 'fluid delivery system' could be 'a fuel pump of the vehicle' and the 'fluid container' could be the vehicle's 'fuel lines.' "  JA19.   In particular, the District Court focused on claim 39's effort to stretch the meaning of "fluid container" in claim 22 to capture a car's fuel lines. *See* JA18-21.  The court demonstrated that the use of "fluid container"

in the original patent was wholly incompatible with fuel lines.  As one example, it noted that "a feature of the present invention" requires inserting a nozzle into the fluid container's "input orifice," and ceasing fluid delivery when the nozzle is removed.  JA20.  Fuel lines do not have an input orifice though which a removable nozzle delivers fuel.  That meant adding fuel lines to the category of fluid containers would cover devices outside the scope of the original claims, which in turn rendered that addition invalid.  *See* JA20-21.

Rydex does little to refute the District Court's reasoning.  Very little:  its briefing on this issue repeats word-for-word its reply brief below, with only the lightest editing to replace "Defendants" with "the district court."  *Compare* JA201-204, *with* Br. 23-27.  Rydex's unresponsive arguments thus remain as meritless here as they were below.[5]

---

[5]     To be clear, claims 39 and 40 might seem narrower than claim 22 in the sense that they are more specific; fuel lines do describe a smaller universe of items than the generic term "fluid containers."  But that does not make these claims valid.  This Court has explained that a "claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects."  *In re Freeman*, 30 F.3d 1459, 1464 (Fed. Cir. 1994) (quoting *Tillotson, Ltd.* v. *Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987)).  Thus even if claim 39 is narrower than claim 22 in certain respects—for example, 39 requires use of fuel lines specifically whereas 22 allows use of fluid containers more generally—39 is still broader because the specified fuel line is a completely different thing than a fluid container.  Imagine, for example, an independent claim that referred generally to "apples."  A later-added dependent claim purporting to limit the claim to just "navel oranges" would be "narrower" in that it would

Rydex begins by noting that under "the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend." This, Rydex argues, entitles claims 39 and 40 to a presumption of validity. Br. 24 (quoting *AK Steel Corp.* v. *Sollac,* 344 F.3d 1234, 1242 (Fed. Cir. 2003)).

Not so. Rydex fundamentally misunderstands how the doctrine of claim differentiation works. As this Court has explained, claim differentiation "can not broaden claims beyond their correct scope." *Kraft Foods*, 203 F.3d at 1368. The doctrine helps courts understand the relationship between claims, not prop up otherwise invalid ones. Putting that rule to practice, this Court in *ICU Medical* rejected a similar bid to expansively construe an independent claim based on a dependent claim added "years after the filing date of the original patents." *ICU Med.*, 558 F.3d at 1376 (citation omitted). Below, both the defendants and the District Court pointed to *ICU Medical* as proof that Rydex's argument was meritless. JA21, JA1281. We would have expected Rydex to join issue with *ICU Medical* in its opening brief if it had any plausible response. We trust Rydex will not wait until its reply to do so. *Cf. Gonzales-Servin* v. *Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (Posner, J.) ("The ostrich-like tactic of pretending that

---

identify a more specific fruit, but it would obviously (and impermissibly) expand the scope of the original claim by embracing a different fruit altogether.

potentially dispositive authority against a litigant's contention does not exist is as

unprofessional as it is pointless.") (internal quotation marks and citation omitted).

The two authorities Rydex offers to support its argument do nothing of the

sort. Neither even hints that claim differentiation could support reading an

independent claim in the original patent broadly in order to save a later-added

dependent claim from invalidity. *See American Piledriving Equip., Inc.* v.

*Geoquip, Inc.*, 637 F.3d 1324, 1335 (Fed. Cir. 2011); *AK Steel*, 344 F.3d at

1241-43.

The bottom line is that claim differentiation "only creates a presumption that

each claim in a patent has a different scope." *Kraft Foods*, 203 F.3d at 1368.

Because a dependent claim cannot, by definition, be broader than the independent

claim on which it depends, *valid* dependent claims can only differ in scope by

being narrower. *See, e.g., American Piledriving,* 637 F.3d at 1335. When,

however, the dependent claim exceeds the scope of the independent claim, the

doctrine of claim differentiation has no relevance. The problem is not one of

differentiation—the two claims plainly have different scopes—but rather of

invalidity. This Court has held that even when independent and dependent claims

are both part of the original patent, and a mere drafting error causes the dependent

claim to have the broader scope, the dependent claim must be invalidated. *See*

*Pfizer, Inc.* v. *Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1291-92 (Fed. Cir. 2006). That

imperative has all the more force where—as here—the dependent claim was added at a later date, thus also transgressing 35 U.S.C. § 305.

Rydex nevertheless insists that it must be right based on a circular proof: the law forbids a patentee from enlarging a patent during reexamination, so the dependent claims Rydex managed to add obviously must not have enlarged the patent. *See* Br. 25 (quoting JA229). But that plea is no more persuasive than a burglar's claim that because the law forbids taking other people's property, he is likely the rightful owner of your television. Certainly this Court has never suggested that the statutory prohibition on expanding claims during reexamination hinders courts from invaliding claims that transgress this command. *See, e.g.*, *Anderson,* 160 F.3d at 1349-50; *Thermalloy, Inc.* v. *Aavid Eng'g., Inc.*, 121 F.3d 691, 692-694 (Fed. Cir. 1997); *Quantum Corp.* v. *Rodime, PLC*, 65 F.3d 1577, 1580-82 (Fed. Cir. 1995).[6]

---

[6]    Rydex suggests the standard here should be "clear and convincing evidence," citing a case addressing whether a patent was invalid on grounds of obviousness. Br. 27 (citing *Oakley, Inc.* v. *Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003)). But the above cases—and others—considered whether additions during reexamination impermissibly expanded the original patent without ever mentioning the "clear and convincing" standard. *See, e.g.*, *Predicate Logic*, 544 F.3d at 1302; *Creo Prods.*, 305 F.3d at 1344; *Hockerson–Halberstadt, Inc.* v. *Converse Inc.*, 183 F.3d 1369, 1373-75 (Fed. Cir.1999); *In re Freeman*, 30 F.3d at 1464. That is because "[w]hether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction, which this court reviews de novo." *Creo Prods.*, 305 F.3d at 1344. If this de novo inquiry reveals that the amendments did

In a similar vein, Rydex asserts that the claims it added during reexamination must be valid because the Patent and Trademark Office recorded them in its certificate. This argument contradicts precedent twice over. *First*, this Court has explained that the PTO examiner does not actually decide issues—such as whether new claims exceed the scope of the original patent—on which he or she does not expressly rule. *See In re NTP, Inc.*, 654 F.3d 1268, 1278-79 (Fed. Cir. 2011). Rydex offers no evidence that the examiner addressed the arguments at issue here. *Second,* "courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Environmental Techs. Corp.* v. *Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991). In short, that Rydex managed to smuggle its invalid claims past an examiner offers no grounds to sustain them here.

Rydex also asserts that the District Court "failed to consider any evidence of an apparatus which would not have infringed the original patent, but would infringe the reexamined patent." Br. 27. But the District Court did just that. Immediately after explaining how fuel lines are covered by claim 39, but not claim

---

enlarge the claim's scope, the amendments violate § 305, and are therefore necessarily invalid as a matter of law. *See Predicate Logic*, 544 F.3d at 1302.

22, the District Court squarely held that "[b]ecause the claims asserted in the amended claims 39 and 40 contain within their scope apparatuses that would not have infringed the original patent, the claims are impermissibly broad." JA21. Rydex cannot impeach this conclusion by pretending that the District Court never made it.

## III.   RYDEX'S OBJECTIVELY FRIVOLOUS ARGUMENTS WARRANT SANCTIONS UNDER RULE 11.

It is common knowledge that "[a] patent suit can be an expensive proposition." *View Eng'g, Inc.* v. *Robotic Vision Sys. Inc*., 208 F.3d 981, 986 (Fed. Cir. 2000). Non-practicing entities like Rydex can exploit that economic reality. After all, the Damoclean threat of costly patent litigation is often enough to extract settlements even if the threat is backed up by the flimsiest claims of infringement.

Federal Rule of Civil Procedure 11 serves to deter such shakedowns: "Defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates." *Id*. But Rule 11 sanctions protect more than just defendants, because "baseless filings" like Rydex's also "abuse the judicial system and burden courts * * * with needless expense and delay." *Judin* v. *United States*, 110 F.3d 780, 784 (Fed. Cir. 1997). This Court has thus emphasized the important role of sanctions in protecting the judicial system, stressing that Congress specifically modified Rule 11 to include "mandatory language" in order to " 'reduce the reluctance of courts to impose

37

sanctions.' " *Id.* (quoting *Refac Int'l, Ltd.* v. *Hitachi, Ltd.*, 921 F.2d 1247, 1257 (Fed. Cir. 1990)).

There is no question that Rule 11 is an appropriate vehicle for policing frivolous claim-construction arguments. In *Raylon*, this Court held that, because claim construction "is a matter of law * * * an attorney's proposed claim construction is subject to Rule 11(b)(2)'s requirement that all legal arguments be nonfrivolous." 700 F.3d at 1368. When reviewing a district court's Rule 11 decision, this Court applies the law of the regional circuit in which the district court sits. *Id.* at 1367 (citing *Eon-Net*, 653 F.3d at 1328). "In the Fifth Circuit, when determining whether there was a Rule 11 violation, 'the standard under which an attorney is measured is an objective, not subjective standard of reasonableness under the circumstances.' " *Id.* (quoting *Whitehead* v. *Food Max of Miss., Inc.*, 332 F.3d 796, 803 (5th Cir.2003) (en banc)).

*Raylon* supplies more than just the parameters for answering the sanctions question here. It also supplies the answer. In this case and in *Raylon*, the plaintiffs relied on linguistic sophistry to urge claim constructions capacious enough to capture the defendants' products. In *Raylon*, the invention included a housing case, with a display screen "pivotally mounted on said housing." *Id.* at 1365. The patentee urged that that claim term could be construed to include handheld devices with fixed displays, because a user "pivots" the whole device, including the screen,

38

"by moving his elbow, wrist, or other joint." *Id.* Rydex has relied on similar creativity, suggesting, for example, that fuel lines could be a "fuel container" because they "contain" fuel when the fuel briefly passes through them, and that a "fluid delivery transaction" occurs when a car's gas tank "delivers" gas to the fuel lines. In both *Raylon* and this case, the district court saw through such artifice, but declined to impose sanctions for advancing it. *See id.* at 1365-66.

This Court reversed the trial court and required the imposition of sanctions in *Raylon*, as it should here. The *Raylon* Court explained that the plaintiff's constructions merited sanctions because they were "contrary to all the intrinsic evidence and [did] not conform to the standard canons of claim construction." *Id.* at 1369. So too here. Rydex's brief does not identify *any* intrinsic evidence in the original patent that supports its claim construction, and makes little effort to rebut the abundant contrary evidence in the patent. *Compare id.* at 1368-69 (describing the ample intrinsic evidence inconsistent with plaintiff's construction), *with* JA22-28 (same).[7]

---

[7]    In this Court, Rydex places even less reliance on intrinsic evidence than the sanctioned plaintiff in *Raylon*. That plaintiff at least pointed to a single sentence in the specification that, it claimed, supported its construction. *See* 700 F.3d at 1368. Rydex made a similar effort below, relying on a single inapposite sentence in the original specification to support its view that the fluid delivery transaction in question could occur entirely inside a vehicle. *See* JA1165, *Markman* Hr'g Tr. at 45. But it has wisely opted not to reprise that meritless argument in this Court.

*Raylon* holds that a plaintiff's construction is "objectively baseless" when not supported by any "reasonable application of the principles enunciated in *Phillips*," this Court's landmark en banc decision on the principles of claim construction.  700 F.3d at 1369 (quoting *MarcTec, LLC* v. *Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012)).  Here, Rydex relies on *Phillips* only to argue that the District Court should not have construed the claims at all.  *See* Br. 13, 16, 17.  That hardly shows how the principles of *Phillips* support its interpretation of the claim terms.  But to put the point even finer, Rydex's view squarely contradicts this Court's precedents.  *See supra* 22-23 (citing, among other cases, *O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.")).

Moreover, Rydex's suit sought to evade the core teaching of *Phillips*:  claim construction establishes "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," after reading "the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Rydex never seeks to show how someone skilled in the art would adopt its construction after reading the entire patent.  Instead, its argument boils down to the hope that lay jurors, viewing the claim terms in isolation, could theoretically adopt its view.  Much like the plaintiff's

40

grammatically possible but practically absurd construction in *Raylon*, this approach runs contrary "to the standard canons of claim construction." *Raylon*, 700 F.3d at 1369.

This case differs from *Raylon* only in that Rydex tried to preemptively shore up its objectively unreasonable claim construction by adding new claims during reexamination. But that only magnifies the frivolity of Rydex's arguments and amplifies the need for deterrent sanctions. To begin with, attempting even to add those new claims abused the reexamination process. This Court has explained that "amendment of claims during reexamination is limited to amendment in light of prior art raising a substantial new question of patentability." *In re Freeman*, 30 F.3d at 1468. Amending for other reasons—such as attempting to capture existing products within the scope of the patent—is improper. *See id.* Here the prosecuting attorney admitted that the purpose of adding dependent claims was not to "further distinguish prior art," but instead to "make sure the claims were as broad as possible" with respect to "products sold by automotive companies." JA257, 273.

Moreover, relying on claims added during reexamination to forge a more expansive interpretation of the original claims is likewise frivolous. This Court has consistently rejected such attempts. *See ICU Med.*, 558 F.3d at 1376; *Anderson*, 160 F.3d at 1349-50; *Quantum*, 65 F.3d at 1580-84; *In re Freeman*, 30 F.3d at 1464-65. After all, "[t]o permit the use of claims added during reexamination for

that purpose would invite manipulation of the reexamination process and would

not be a reliable guide to the meaning of language used in the original claims."

*Total Containment, Inc.* v. *Environ Prods., Inc.*, 106 F.3d 427, 1997 WL16032, *2

(Fed. Cir. 1997) (unpublished); *see also Quantum*, 65 F.3d at 1584 (stressing the

need to deter attempts to broaden claims during reexamination).[8]  Yet Rydex relies

on exactly this sort of manipulation as the core of its case.

 The District Court never explained why it denied the sanctions needed to

deter schemes such as Rydex's.  For that reason, its summary order cannot be

sustained.  As this Court held in *Raylon*, a district court necessarily abuses its

discretion if it fails to address reasonable arguments for Rule 11 sanctions.  *See*

700 F.3d at 1369.  The Fifth Circuit has explained why, in language *Raylon*

quoted:  "It is well settled that, to conduct our review, we must be able to

understand the district court's disposition of the sanctions motion."  *Copeland* v.

*Wasserstein, Perella & Co.*, 278 F.3d 472, 484-485 (5th Cir. 2002) (quoted in

*Raylon*, 700 F.3d at 1369).  And long before *Raylon*, this Court held that "[w]hen

---

[8]    Under Federal Circuit Rule 32.1(d), this Court may look to unpublished
opinions such as *Total Containment* for "guidance or persuasive reasoning," but
will not give them "the effect of binding precedent."  There is no need to rely on
*Total Containment* as binding, because ample published precedent establishes the
rule that new claims appended during reexamination cannot expand the scope of
the original patent.  *See supra* 35 (collecting cases).  But *Total Containment* does
persuasively explain one reason behind that clear rule: to prevent exactly the sort
of manipulation of the reexamination process that occurred in this case.

the requesting party makes a strong showing that Rule 11 violations may have

occurred, * * * the district court should provide some explanation for disregarding

the proffered showing." *S. Bravo Sys., Inc.* v. *Containment Techs. Corp.*, 96 F.3d

1372, 1375 (Fed. Cir. 1996).  This Court thus refuses to affirm summary denials of

sanctions like that issued by the District Court.  *See*, *e.g.*, *id.* at 1375-76

(remanding for district court to explain denial of a "substantial Rule 11 showing");

*Refac*, 921 F.2d at 1257 (remanding summary denial of sanctions).

In this case, there is no need to remand to the District Court to determine

whether sanctions are warranted under Rule 11.  As in *Raylon*, "[t]his is a clear

instance where no objectively reasonable litigant * * * would believe its claim

construction could succeed; therefore [Rydex's] claim construction is frivolous and

thus sanctionable under Rule 11(b)(2)." *Raylon*, 700 F.3d at 1369; *see also Judin*,

110 F.3d at 784-785 (finding Rule 11 violation in the first instance on appeal).

Here, it makes particular sense for this Court to resolve the Rule 11 issue.  Claim

construction is purely a matter of law, and under the Fifth Circuit's approach, the

sanctions inquiry is purely objective.   This Court therefore has all the information

it needs to judge whether a violation of Rule 11 occurred.   Indeed, the *Raylon*

Court did not hesitate to examine a claim construction argument that the district

court did not address, hold that it violated Rule 11, and remand to determine the

appropriate sanction.  *See* 700 F.3d at 1369-70.  This Court should do the same.

43

**CONCLUSION**

For the foregoing reasons, the judgment of the District Court regarding

infringement should be affirmed, its denial of sanctions should be reversed, and the

case remanded to determine the appropriate sanction.

Dated December 16, 2013                    Respectfully submitted,

                                           /s/ Christopher T. Handman
Eric A. Buresh                             Christopher T. Handman
Jason R. Mudd                              Hagan Scotten
ERISE IP, P.A.                             HOGAN LOVELLS US LLP
6201 College Boulevard, Suite 300          555 Thirteenth Street, N.W.
Overland Park, KS 66211                    Washington, D.C. 20004
(913) 777-5600                             (202) 637-5600

                                           *Counsel for Defendants-Cross*
                                           *Appellants Ford Motor Company and*
                                           *Mazda Motor of America, Inc.*


Jeffrey S. Patterson                       Eric W. Schweibenz
Sean N. Hsu                                Richard D. Kelly
Hartline Dacus Barger Dreyer LLP           Robert C. Mattson
6688 North Central Expressway              OBLON, SPIVAK, MCCLELLAND,
Suite 1000                                 MAIER & NEUSTADT, L.L.P.
Dallas, TX 75206                           1940 Duke Street
(214) 346-3701                             Alexandria, VA 22314
                                           (703) 413-3000
*Counsel for Defendant-Cross*
*Appellant Nissan North America, Inc.*     *Counsel for Defendant-Cross*
                                           *Appellant Toyota Motor Sales,*
                                           *U.S.A., Inc.*

44

# ADDENDUM

Case 4:11-cv-00122 Document 366-5 *SEALED* Filed in TXSD on 04/22/13 Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RYDEX, LTD. | § | |
| | § | |
| Plaintiff, | § | CAUSE NO.: 4:11-cv-0122 |
| | § | |
| v. | § | |
| | § | |
| FORD MOTOR COMPANY, | § | |
| ET AL. | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

## ORDER

Came for consideration before the Court, Defendants' Motion for Rule 11 Sanctions (Dkt # 358). The Court, having considered the papers and the arguments of counsel, finds that the motion should be **DENIED**.

It is so **ORDERED**.

Signed this 15th day of April, 2013.

_____
United States District Judge
Vanessa D. Gilmore

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,462 words.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ Christopher T. Handman
Christopher T. Handman

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2013, I caused a copy of this brief to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

/s/ Christopher T. Handman
Christopher T. Handman